In re HALL'S MOTOR TRANSIT
COMPANY, Debtor.

CENTRAL TRANSPORT, INC., a
Michigan Corp., Appellant,

The Village of Hodgkins, an Illinois municipal corp., Josh Adair, Richard Morrell, Claude Sexton, Donald Cuttill, Eugene Drenning, Paul Shruve, and Noel

Cummings, in their capacity as Trustees for the Village of Hodgkins and Hall's Motor Transit Company.

No. 89–5503.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Oct. 31, 1989.

Decided Nov. 21, 1989.

Patrick A. Moran, Michael A. Nedelman, Stephanie M. Rutkowski, Simpson & Moran, Birmingham, Mich., for appellant.

Lisa T. Hamilton, Jenner & Block, Chicago, Ill., John T. O'Connell, Patrick T. Rogers, John T. O'Connell, Ltd., Willow Springs, Ill., for appellees.

Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge and GERRY, District Judge [*].

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

■ We are faced here with a question of whether a corporation which buys property initially zoned for use as a motor freight terminal but which use is upgraded to commercial zoning during the completion of the contract of sale can bring suit in bankruptcy court as a related proceeding to the debtor's petition in order to obtain a temporary restraining order from the bankruptcy court to halt the ticketing of the freight drivers entering the property for terminal usage. We conclude that both the bankruptcy court and the district court properly determined that the bankruptcy court did not have subject matter jurisdiction over the suit since it was a noncore, nonrelated proceeding. Consequently, we will affirm the district court's order dismissing the case and vacating the temporary restraining order.

### I.

For a number of years, Hall's Motor Transit Company (Hall's), a Pennsylvania Corporation, owned property in the Village of Hodgkins (Village), Illinois, which was zoned for use as a motor freight terminal. On March 10, 1986, Hall's filed a voluntary chapter 11 petition in bankruptcy. The petition automatically stayed the commencement of any action against Hall's estate. Several months later, on June 24, 1986, GLS LeasCo, Inc. (GLS) successfully bid in the bankruptcy court to buy Hall's terminal. On November 12, the sale was closed, and title to the terminal was transferred to GLS which contemporaneously transferred the property to Central Transit. More than a year afterward, Central Transit proceeded to use the property as a motor freight terminal in the same manner as Hall's.

Between the time GLS bid on the terminal in June and the completion of the sale in November, the Village rezoned the property from a motor freight terminal zone to a "Commercial C" zone. Although GLS was aware of the proposed rezoning, GLS did not challenge the change and did not request Hall's to challenge the proceedings nor did GLS renegotiate the price of the sale. In May, 1988, the Village initiated a condemnation action against the property.[1] In July, 1988, the Village began ticketing the Central Transit drivers for violation of the zoning ordinance and for operating a business without a license.[2]

Central Transit filed a complaint in the United States District Court for the Northern District of Illinois seeking declaratory, injunctive and monetary relief from the Village's ticketing of Central Transit's drivers pending the outcome of the condemnation action. The district court in Illinois determined that the issue of whether the rezoning action by the Village was void *ab initio* because it was in violation of the automatic stay was an issue best left to the bankruptcy court to resolve.

Accordingly, Central Transit filed a complaint in the Bankruptcy Court for the Middle District of Pennsylvania requesting declaratory and injunctive relief prohibiting

---

[*] Honorable John F. Gerry of the United States District Court for the District of New Jersey, sitting by designation.

1. The condemnation action is still ongoing at the time of this writing. It is captioned *The Village of Hodgkins v. Central Transport, Inc., et al.,* Civ. No. 88–L–50512 (Cir.Ct. Cook County), *appealed at,* No. 89–1738 (Ill.App.Ct.).

2. The bankruptcy court determined that Central Transit had lost its right to use the property as a motor freight terminal because it had failed to use it for that purpose for over a year. Thus, Central Transit lost its right to use the property as a prior inconsistent usage. Considering that the bankruptcy court determined it did not have subject matter jurisdiction, it did not need to make that finding of fact.

the Village from interfering with Central Transit's use of the terminal and from taking further action based on the rezoning ordinance. The bankruptcy court issued a temporary restraining order, which it subsequently dismissed *sua sponte* upon determination that the court lacked subject matter jurisdiction over the proceeding. The bankruptcy court reissued the TRO pending appeal to the district court because of the nature of the harm Central Transit would suffer if the Village's actions were not enjoined. The district court affirmed the bankruptcy court's order dismissing the action for lack of subject matter jurisdiction and vacated the TRO. Central Transit appeals.

## II.

Central Transit's pivotal argument is that the right to use the property as a motor freight terminal is a right belonging to Hall's estate which came within the jurisdiction of the bankruptcy court as part of the estate and, therefore, was subject to the automatic stay provisions of the Bankruptcy Code found at 11 U.S.C.A. § 362. Consequently, Central Transit argues, any action taken to change the zoning ordinance affected the right to use the property as a motor freight terminal and such action could not be taken without the permission of the bankruptcy court. The Village contends that the automatic stay is not applicable to a zoning ordinance.

Both the bankruptcy court and the district court found that it lacked subject matter jurisdiction of the proceedings because the dispute no longer involved Hall's estate. Our first concern with this appeal is to make a determination of whether the bankruptcy and district courts were correct in their conclusion that they lacked subject matter jurisdiction of the suit.

The jurisdiction of a federal court to hear a case cannot be assumed; it must be conferred upon the court by statute. *See Matter of Chicago, Rock Is. & Pac. R. Co.,* 794 F.2d 1182 (7th Cir.1986). Central Transit contends that the district court had jurisdiction pursuant to 28 U.S.C.A. § 157[3] and § 1334(b). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." Central Transit contends that the relief it sought was directly related to the automatic stay provisions of the Bankruptcy Code and the effectiveness of the Village's rezoning ordinance which was enacted while the property was still part of the debtor's estate.

Central Transit obtained the property from Hall's in a sale permitted by the bankruptcy trustee and affirmed by the bankruptcy court after the rezoning had occurred. Consequently, the property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction. The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate. *Matter of Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987). As we noted in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994.

Thus, the usual test of determining whether a civil proceeding, such as we have here, is related to bankruptcy is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor,* 743 F.2d at 994. Central Transit's suit for

---

**3.** Section 157 provides that:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157 (West 1989 Supp.).

declaratory and injunctive relief to stop the Village's ticketing of its drivers does not affect the outcome or administration of Hall's estate. Clearly, Central Transit's suit cannot be premised on either 28 U.S.C.A. § 157 or § 1334.

Similarly, we must reject Central Transit's argument that the district court had jurisdiction over the matter pursuant to 28 U.S.C.A. § 1331 because bankruptcy is a federal matter and district courts have jurisdiction over questions of federal law. Central Transit contends that the issue involves bankruptcy law because of the application of the automatic stay provision found at 11 U.S.C.A. § 362(a) to the rezoning ordinance. If this suit was being brought by Hall's while still in possession of the property, the matter would fall within the jurisdiction of the district court as a bankruptcy matter. However, as noted above, when the terminal left the estate of the debtor and became the property of Central Transit, its relation to the bankruptcy proceedings was at an end. *Cf. Matter of Xonics*, 813 F.2d 127 (7th Cir.1987). "Otherwise any one who could trace his title to a bankrupt would invoke federal jurisdiction to settle disputes affecting that property." 813 F.2d at 131. Since there is no relation to the bankruptcy proceedings, 28 U.S.C.A. § 1334 does not afford jurisdiction. Central Transit contends that there is jurisdiction under 28 U.S.C.A. § 1331 because it claims that 11 U.S.C.A. § 362 provides it with a cause of action to challenge the Village's zoning ordinance. We hold that this contention is so wholly insubstantial and frivolous that it will not support jurisdiction under § 1331. *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *see also Jackson v. O'Bannon*, 633 F.2d 329, 331 n. 1 (3d Cir.1980); *Williams v. Wohlgemuth*, 540 F.2d 163, 166 (3d Cir.1976). Consequently, we will affirm the district court's dismissal of the suit and its order vacating the TRO for lack of subject matter jurisdiction.

### III.

■ The Village requests that we impose sanctions under Rule 38 for what it refers to as a frivolous and meritless appeal. The Federal Rules of Appellate Procedure Rule 38 provides: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." In determining whether an appeal is frivolous, we must do more than observe that it was an unsuccessful appeal. We must decide, for example, that the appeal was taken in bad faith with an intent to delay, harass, or that the arguments of the appeal had no basis in law or were totally without merit. *E.g., DeWitt v. Western Pa. R. Co.*, 719 F.2d 1448 (9th Cir.1983); *and Ruderer v. Fines*, 614 F.2d 1128 (7th Cir.1980).

The issues involved in this case can be traced back to bankruptcy proceedings—a relatively complex area of law. Central Transit was directed by the district court in Illinois to obtain relief from the Village's ticketing of its motor freight drivers on the basis of the automatic stay from the bankruptcy court. Indeed, the bankruptcy court originally granted Central Transit's request for a TRO, then *sua sponte* recognized that it did not have subject matter jurisdiction of the case since the property was no longer part of the bankrupt's estate. Under the circumstances of this case, we conclude that Central Transit raised colorable arguments, even though, upon reflection, we rejected them. Consequently, we do not find that the appeal by Central Transit warrants the imposition of Rule 38 sanctions.

### IV.

We conclude that the district court properly determined that it lacked subject matter jurisdiction over the dispute and, therefore, we will affirm the order of the district court dismissing the case and vacating the TRO. In addition, we find that this is not a proper case for the imposition of Rule 38 sanctions inasmuch as we find that Central Transit did not bring the appeal to delay or harass. Therefore, we will deny the Village's motion for sanctions.